**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

GARY and PATRICIA LITTLEJOHN,
as Co-Administrators of
the ESTATE of CHRISTOPHER
LITTLEJOHN, deceased                                                          PLAINTIFFS

V.                                                          CIVIL ACTION NO. 1:14-CV-00044-SA-DAS

WERNER ENTERPRISES, INC., and
CLIVE CARVEY                                                                 DEFENDANTS

## MEMORANDUM OPINION

Plaintiffs Gary Littlejohn and Patricia Littlejohn, acting as co-administrators of the Estate of Christopher Littlejohn, commenced this personal injury action to recover compensatory and punitive damages from Clive Carvey and Werner Enterprises, Inc. ("Werner"). Presently pending before the Court are two motions for partial summary judgment [96, 100]. Upon consideration of the motions, responses, rules, and authorities, the Court finds as follows:

*Factual and Procedural Background*

In January 2014, Defendant Clive Carvey was operating a Freightliner truck owned by Werner while on U.S. Highway 72 in Tishomingo County, Mississippi. Carvey drove the truck past the weigh station at Iuka, Mississippi. He then stopped in the middle of the four lane highway and reversed in regular lanes of traffic to go back to the weigh station. As Carvey was backing his vehicle up, Christopher Littlejohn's vehicle collided with the rear of Carvey's vehicle, fatally injuring Littlejohn.

Plaintiffs brought suit in this Court, pursuing theories of negligence, gross negligence, and wantonness against both Carvey and Werner, as well as negligent hiring, negligent training, and negligent supervision against Werner. Plaintiffs have also alleged that, "[a]s principal of

Defendant Carvey," Werner is responsible for Carvey's conduct arising "within the scope of his agency . . . ."

By previous memorandum opinion and order, the Court dismissed any punitive damages claims against Werner arising solely through vicarious liability for the conduct of Carvey. Defendants have since conceded that Carvey was negligent in the operation of his vehicle and that he was acting within the course and scope of his employment at the time of the collision.

In the motions now before the Court, Defendants seek dismissal of the direct negligence and punitive damage claims against Werner based on the company's alleged conduct, as well as any claim against either Defendant for lost earnings based on Littlejohn's prospective ownership of a Subway franchise.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A party may seek summary judgment on an entire claim or part of a claim. FED. R. CIV. P. 56(a).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth

'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Direct Negligence Claims against Werner

Mississippi's federal courts have held direct negligence claims against an employer to be redundant and due to be dismissed where the employer has admitted vicarious liability for the injury caused by the actions of its employee. *See, e.g., Dinger v. Am. Zurich Ins. Co.*, 2014 WL 580889, at *3 (N.D. Miss. Feb. 13, 2014); *Welch v. Loftus*, 776 F. Supp. 2d 222, 225 (S.D. Miss. 2011). As stated above, Defendants have stipulated that Carvey was negligent and that he was within the course and scope of his employment with Werner at the time of the accident. Thus, Plaintiffs concede that their direct claims of negligent hiring, negligent training, and negligent supervision against Werner would be redundant of the vicarious liability claim and should be dismissed. Summary judgment on the direct negligence claims is, therefore, granted.

Punitive Damages against Werner

Plaintiffs assert they are entitled to punitive damages on the basis of the allegedly grossly negligent conduct of Werner in hiring Carvey, retaining him after various driving failures, and permitting him to drive alone at the time of the accident in question.

Under Mississippi law, "the trial court is the gatekeeper for the issue of whether punitive damages . . . should be submitted and considered by the jury[,]" and its decision is reviewed for abuse of discretion. *Franklin Corp. v. Tedford*, 18 So. 3d 215, 240-41 (¶54) (Miss. 2009) (citations and quotations omitted). The "law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Warren v. Derivaux*, 996 So. 2d 729, 738 (¶27) (Miss. 2008) (quoting *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988)).

Punitive damages are not to be awarded unless the plaintiff proves "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE. ANN. § 11-1-65(1)(a). The Mississippi Supreme Court has explained that the types of conduct giving rise to punitive damages "import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others." *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (¶17) (Miss. 2006) (quoting *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (¶52) (Miss. 2000)). The decision of whether to submit the issue of punitive damages to the jury is made viewing "the totality of the circumstances and in light of defendant's aggregate conduct . . . ." *Causey v. Sanders*, 998 So. 2d 393, 408 (¶48) (Miss. 2008) (quoting *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 442 (¶20) (Miss. 1999)).

To demonstrate Werner exhibited the type of egregious conduct necessary for punitive damages, Plaintiffs cite incidents occurring throughout Carvey's employment history, arguing that Werner was or should have been aware that its driver was a danger to the public. Prior to his employment with Werner, Carvey was employed in brief stints with two other trucking

4

companies, Crete Carrier and Super Service. Carvey testified that during his approximately two month tenure at Crete Carrier, he would sometimes, while training, miss turns because he was learning how to drive without using a GPS device, and that he was given the option to participate in additional training. Carvey also testified that, at the time, issues arose with his son that required Carvey to be at home. For both of these reasons, Carvey ceased training and employment with Crete Carrier.

In Carvey's subsequent employment with Super Service, he was involved in a collision while turning at a stoplight. Although it is not clear from the record who was at fault, Carvey was required to undergo additional training as a result. Additionally, Carvey testified that he scraped a vehicle with his trailer while training, and that his employment was ended with Super Service because he was not a good fit for the company.

Importantly, as is relevant on the issue of Werner's conduct, there is no evidence that Werner had knowledge of any of these prior issues before hiring Carvey. Through verifying employment with Crete Carrier, Werner was informed that Carvey had a satisfactory work record with Crete Carrier and was, in fact, eligible for rehire upon a successful interview with the company. Werner attempted to similarly verify employment with Super Service, but the report generated did not return Carvey's work history. It instead instructed Werner to submit a Missing Records Request, which Werner failed to do. Then, after a follow-up phone call to which Super Service never responded, Werner chose to hire Carvey.

During his employment with Werner, spanning a period of less than five months, Carvey was involved in three incidents before the accident at issue. Once, he backed up his truck into soft terrain and got it stuck. A different time, in order to protect his cargo from being stolen, Carvey attempted to back his truck up closely to a building, but accidently made contact with the

building. On the third occasion, he again became stuck in soft terrain, although it is not clear whether he was backing up at the time.

Plaintiffs argue that, in light of these various incidents, Werner's decision permitting Carvey to drive alone, when coupled with Werner's failure to obtain his work history, provides a basis for the Court to allow jury consideration of punitive damages. Yet, the Court finds Werner's actions in seeking employment verification to be, at worst, incomplete, and certainly not the type of egregious conduct required for a punitive damage award. *See Gaddis v. Hegler*, 2011 WL 211801, at *4 (S.D. Miss. May 11, 2011) (finding punitive damages instruction proper due to allegations that employer forced employee, upon threat of termination, to drive while experiencing vision problems). Additionally, the decision to retain Carvey as a driver after his previous incidents, only three of which Werner was aware, cannot be fairly labeled as malicious, grossly negligent, or fraudulent. *See Curd v. W. Exp., Inc.*, 2010 WL 4537936, at *3 (S.D. Miss. Nov. 2, 2010) (finding punitive damages not warranted against trucking company even though employee received approximately three speeding tickets, was involved in ten prior accidents, allegedly received no training in seven years of work other than initial safety training, and was not medically qualified to drive the trailer due to poor vision).

This is especially true given the actions Werner *did* take in ensuring driver safety with regard to Carvey. As stated earlier, Werner verified Carvey's employment with Crete Carriers and attempted to do the same with Super Service. At the time of hiring, Carvey was a properly licensed, medically qualified commercial motor vehicle operator with a clean report per the Georgia Department of Motor Vehicles. Werner checked Carvey's Pre-employment Screen records, which showed no incidents reportable with the United States Department of Transportation. Additionally, although Carvey had engaged in some training with his two

6

previous employers, Werner treated him as a new driver and required him to log one hundred and forty hours with a trainer and to pass a skills evaluation before he was permitted to drive a truck by himself. Further, after the accidents in which Carvey backed into soft terrain and into a building, Werner placed him on probation and required him to undergo additional training.

Tellingly, Plaintiff's own expert, Charles Napier, testified that, while in his opinion, there was evidence to support a finding of "reckless, willful, [or] wanton" conduct with regard to Carvey's actions in backing up the trailer in regular lanes of traffic, there was no evidentiary basis to support a similar finding with regard to Werner's conduct. Plaintiffs argue that Napier's testimony simply represents a refusal to usurp the role of the jury. This argument is doubtful, however, as Plaintiffs' expert *did* testify to the level of fault of Carvey, just not to that of Werner. Additionally, Federal Rule of Evidence 704(a) permits an expert opinion that embraces an issue to be decided by the jury so long as it is not otherwise inadmissible.

After viewing the totality of the circumstances, the Court finds Plaintiffs have failed to adduce clear and convincing evidence showing that Werner acted maliciously, grossly negligent, or fraudulently. MISS. CODE. ANN. § 11-1-65(1)(a). The claims for punitive damages against Werner are therefore dismissed.

Lost Earnings

Plaintiffs seek to recover, as an element of damages, the amount Littlejohn would have earned as a fast food restaurant franchisee during his work-life expectancy. According to Littlejohn's father, decedent had expressed a desire to own his own Subway, and the family began taking steps to achieve that goal. To gain experience, Littlejohn worked for several years as the store manager at one of his parents' three Subway locations. Littlejohn's parents purchased an additional franchise option from Subway, and the family began to make plans for a

new location in Burnsville, Mississippi, to be opened before May 2015. Littlejohn's father testified that he intended to make Littlejohn the full owner within six months after the store's opening. Defendants contend that Littlejohn should not be able to recover lost earnings as a store owner because such earnings are speculative.[1]

By its terms, the Mississippi Code is silent as to the elements of recovery in a wrongful death action. *See* MISS. CODE ANN. § 11-7-13 (providing for damages "allowable by law as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit."). Filling the void, the Mississippi Supreme Court has held this statutory language to include: "(1) the present net cash value of the life expectancy of the deceased, (2) the loss of the companionship and society of the decedent, (3) the pain and suffering of the decedent between the time of injury and death, and (4) punitive damages." *McGowan v. Estate of Wright*, 524 So. 2d 308, 311 (Miss. 1988) (citations omitted). At issue here is the present net cash value of Littlejohn's work life expectancy.

Determining the decedent's lost future income is intended to "ensure a reasonable and workable system for establishing damages and to replace what has been lost." *Illinois Cent. R. Co. v. Young*, 120 So. 3d 992, 1010 (¶48) (Miss. Ct. App. 2012) (citation omitted). Indeed, "[t]he paramount concern of a court awarding damages for lost future earnings is to provide the victim with a sum of money that will, in fact, replace the money that he would have earned." *Rebelwood Apartments RP, LP v. English*, 48 So. 3d 483, 496 (¶57) (Miss. 2010) (quoting *Culver v. Slater*

---

[1] Defendants have also filed a *Daubert* Motion [104], seeking to exclude Plaintiffs' economics expert from testifying for failing to subtract an amount from lost earnings for Littlejohn's personal consumption. Defendants have not, however, argued that Plaintiffs' expert should be excluded for purposes of this motion for partial summary judgment. Additionally, Mississippi law does not require expert testimony to establish lost future earnings. S*ee Coleman v. Swift Transp. Co. of Arizona, LLC*, 2014 WL 3533322, at *6 (N.D. Miss. July 16, 2014). Hence, the Court need not opine as to the admissibility of the expert testimony in order to rule on this motion.

8

*Boat Co.*, 722 F.2d 114, 121 (5th Cir. 1983)). Mississippi law requires such an award to be "rooted in the earnings of the decedent during his [work-life] expectancy." *Illinois Cent.*, 120 So. 2d at 1010 (¶48) (quoting *New Deemer Mfg. Co. v. Alexander*, 85 So. 104, 107 (Miss. 1920)) (emphasis removed). Yet, lost future earnings are recoverable, "not as damages to the decedent[,]" but "as damages to the parties interested . . . ." *Id.* (quoting *Belzoni Hardwood Co. v. Cinquimani*, 102 So. 470, 474 (Miss. 1924)). Thus, wrongful death beneficiaries are entitled to "reasonable compensation for the loss of such pecuniary contributions as the decedent would have, and *could have*, made to them." *Smith v. Indus. Constructors, Inc.*, 783 F.2d 1249, 1252-53 (5th Cir. 1986).

In arguing that the recovery for Littlejohn's lost future earnings should not include sums he would have earned as a Subway franchisee, Defendants rely primarily on the Mississippi Supreme Court wrongful death case *Rebelwood Apartments RP, LP v. English*, 48 So. 3d 483 (Miss. 2010). There, the decedent earned $10,585 and $13,099 respectively in the two years preceding her death. *Id.* at 489 (¶28). Although she had obtained applications for entry into the nursing programs of Hinds Community College and Mississippi College, there was no evidence that she actually applied for admission. *Id.* at 496 (¶55). Nonetheless, the trial court permitted the plaintiffs' expert to testify to a base-rate income of $38,651 for 2007 by utilizing national average salaries of high school graduates and registered nurses with bachelor of science degrees. *Id.* at 489-90 (¶¶28-29). On appeal, the Mississippi Supreme Court found only "meager evidence of an intent to [attend] school," and remanded for a new trial. *Id.* at 496-97 (¶55).

Defendant argues that *Rebelwood* requires the lost future earning calculation to begin and end with the decedent's previous income, and that any projected changes in circumstances that would increase the decedent's income are too speculative. This Court, however, has previously

expressed doubt regarding Defendant's reading of *Rebelwood*. *See Person v. Ford Motor Co.*, 2011 WL 10501606, at *8 (N.D. Miss. Oct. 13, 2011) ("[T]he court finds little new precedent arising from this decision. Indeed, it is apparent that the Supreme Court in *Rebelwood* objected to what it found to be attempts by the expert in that case to play the 'race card' . . . .").

Additionally, Mississippi Supreme Court cases preceding *Rebelwood* permit the trier of fact to consider projected increases in a decedent's salary to support a lost earning award. For example, in *Flight Line, Inc. v. Tanksley*, 608 So. 2d 1149, 1165 (Miss. 1992), the Court affirmed the decision to admit expert testimony that the decedent's income would have increased at a rate of 9.1 percent per year. As later explained in *Rebelwood*, the decedent's income for the five years before the injury provided a "colorable factual predicate upon which [the expert] might base his opinion." 48 So. 3d at 495 (¶53) (quoting *Tanksley*, 608 So. 2d at 1165).

A decade later, the Mississippi Supreme Court again affirmed the decision to admit an expert's testimony concerning future earnings even though such earnings significantly exceeded the decedent's previous income. *Choctaw Maid Farms, Inc. v. Hailey*, 822 So. 2d 911, 918 (¶¶22-26) (Miss. 2002). There, the plaintiff had graduated from college and applied to work for an insurance company, where he could expect to earn substantially more than he was making at the time of his death. *Id.* The defendant urged, similar to the argument advanced here, that evidence of a "decedent's intention to enter an occupation other than the one engaged in at the time of death was improper." *Id*. The Court disagreed, explaining in part: "[a]mong matters whose consideration by the trier of fact has been approved are the occupation of the decedent at the time of his death, and other occupations he was qualified to fulfill, or intended, eventually, to fulfill." *Id.* (quoting 22 Am. Jur. 2d *Death* § 284 (1988)). The Court explained that the decedent

10

"had been trained, received a college degree, was working and was absolutely qualified to be a 'typical college graduate' and to receive the earnings commiserate therewith." *Id.*

Turning to the facts before the Court, prior to his death, Littlejohn and his parents took several steps toward ensuring he would become a Subway franchisee. Littlejohn's parents purchased the right to open a Subway franchise in Burnsville, Mississippi; Littlejohn issued a check in the amount of $7,000 for a "franchise fee;" Littlejohn sat for and passed an aptitude test required for all Subway owners; and he and his parents entered into preliminary negotiations with the owner of the East Burnsville Shopping Plaza to lease a space for the prospective Subway location. According to Larry Vuncannon, Littlejohn's friend and his partner in a different business, Littlejohn intended to open the restaurant prior to May 2015. Littlejohn's father testified that he "was going to help [Littlejohn] get the building up, you know, get it started, . . . and our plan was to turn it completely over to him, probably within six months after it opened, if that long." Accordingly, this case is unlike *Rebelwood*, where there was only "meager evidence of an intent to [attend] school." 48 So. 3d at 496 (¶55). Rather, more like the plaintiff in *Hailey*, Littlejohn had trained by working as a Subway manager, was apparently qualified as evinced by his passing the aptitude test, and had taken very specific steps toward achieving the position he sought.

Defendants argue that notwithstanding Littlejohn's future plans, the success of his business is far from established, and the extent of that success is purely speculative. The Court agrees that the damages must be proven at trial to a reasonable degree of certainty. *Tanksley*, 608 So. 2d at 1164. To that end, Plaintiffs have submitted evidence of ownership earnings for the three other Subway locations owned by Littlejohn's parents, all in towns with small populations similar to Burnsville, Mississippi. The Court finds this to be a sufficient factual basis for a jury to

determine an appropriate amount. After all, some level of juror approximation will prove inherent in any calculation of a future, hypothetical income stream. *See Butler v. United States*, 726 F.2d 1057, 1068 (5th Cir. 1984) (explaining "that [t]here is no mathematical formula recognized in the jurisprudence of Mississippi to determine the amount of damages in a wrongful death action, and that the Mississippi Supreme Court does not ordinarily disturb the findings of the trier of facts . . . [unless] it appears from the evidence that the amount of the [award] bears no reasonable relation to the loss suffered") (quotations omitted) (alterations in original); *see also Flax v. Quitman Cnty. Hosp., LLC*, 2011 WL 3585870, at *7 (N.D. Miss. Aug. 16, 2011) ("The trajectory of an individual's work career is not set at age twenty-one . . . ."). And at trial, Defendants are free to rebut Plaintiffs' assertions with use of their own evidence and by cross examination.

Defendants additionally argue that the Plaintiffs, Littlejohn's parents, are entitled to no recovery for Littlejohn's lost earnings as a Subway owner because they still own the rights to open the Subway franchise, and that any recovery on the basis of such an ownership interest would constitute an impermissible double recovery in their favor. *See Richardson v. Canton Farm Equip., Inc.*, 608 So. 2d 1240, 1250 (Miss. 1992) ("Compensatory damages . . . compensate the injured party for the injury sustained, and nothing more, such as will make good or replace the loss caused by the wrong of the injury.") (citation omitted).

However, Defendants' position mistakes the basis of the lost earnings for which Plaintiffs seek to recover. Undoubtedly, Littlejohn's parents have not lost the contractual option to open a Subway franchise in Burnsville, Mississippi. But any compensation that would have accrued as a result of Littlejohn's labor, time, ingenuity, and other contributions to the workplace as an owner *has* been lost due to Littlejohn's passing and, thus, may serve as a basis for a lost earnings award.

*See Rebelwood*, 48 So. 3d at 496 (¶57) (noting the purpose of lost earnings award to "replace what has been lost.")

Defendants also suggest that summary judgment is appropriate because Plaintiffs are under a duty to mitigate their losses by opening and running the Subway franchise themselves or by having a different child do so. Under Mississippi law, a plaintiff is under a duty to "take reasonable steps to mitigate his damages." *Manhattan Nursing & Rehab. Ctr., LLC v. Pace*, 134 So. 3d 810, 818 (¶28) (Miss. 2014) (quoting *Buras v. Shell Oil Co.*, 666 F. Supp. 919, 924 (S.D. Miss. 1987)). Thus, "an injured plaintiff is not allowed to recover for damages that he did not take reasonable steps to avoid." *Id.* (citing *Munn v. Algee*, 924 F.2d 568, 573 n.9 (5th Cir. 1991)).

Yet regarding the duty to mitigate, no case has been cited by Defendants or located by the Court compelling the conclusion that wrongful death beneficiaries are required to generate income (through the running of a business or otherwise) as replacement for what their deceased family member would have earned. Defendants identify authority recognizing a duty to mitigate under Mississippi law in the wrongful death context, but those cases involve decisions to refuse healthcare *prior* to the decedent's death, not the failure to minimize projected lost earnings of the decedent after his death. *Manhattan Nursing*, 134 So. 3d at 818 (¶28) (finding the healthcare refusal of the family of the decedent relevant to the issue of mitigation); *Munn*, 924 F.2d at 573-74 (declining to recognize an exception to the duty to mitigate when refusal of healthcare was based on religious motivation). And importantly, "mitigation is an affirmative defense[,]" and defendants are "burdened to charge and prove that [plaintiffs] ha[ve] failed in their duty." *Wall v. Swilley*, 562 So. 2d 1252, 1258 (Miss. 1990) (citations omitted). Thus, granting summary judgment on an alleged failure to mitigate would be inappropriate.

The Court finds that Plaintiffs may present evidence of Littlejohn's potential Subway ownership to the jury for a determination of the appropriate lost earnings award.

*Conclusion*

For the foregoing reasons, the Motion for Partial Summary Judgment [96] as to claims of direct negligence and punitive damages against Werner is GRANTED, but the Motion for Partial Summary Judgment [100] as to the lost earnings award is DENIED. A separate order to that effect shall issue this day.

SO ORDERED, this 23rd day of June, 2015.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**